FILED

UNITED STATES DISTRICT COURT 2022 JUL 19 PM 2:50
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

CASE NO. 6:22-cr-114-PGB-EJK

18 U.S.C. § 371
21 U.S.C. § 841(a)(1)

v.

VINCENT R. SPERTI II

**INFORMATION**

The United States Attorney charges:

**COUNT ONE**
**(Conspiracy to Defraud the United States and Pay and Receive Kickbacks)**

**A.  Introduction**

At all times material to this Information:

The Conspirators and Their Enterprises

1.     Vincent R. Sperti II was a resident of the Middle District of Florida and worked for TrueAlliance Pros LLC ("TrueAlliance").

2.     TrueAlliance was a limited liability company located in Orange County, in the Middle District of Florida.

3.     Individual 1 was the owner and operator of TrueAlliance.

4.     Marketer 1 and Marketer 2, along with a third individual, owned and operated a purported marketing company located in Seminole County, in the Middle District of Florida.

1

## The Medicare Program

5.      The Medicare Program ("Medicare") was a federal health insurance program that provided medical benefits, items, and services to beneficiaries:

     a.      aged 65 and older,

     b.      under 65 with certain disabilities, and

     c.      of all ages with end-stage renal disease (permanent kidney failure requiring dialysis or a kidney transplant).

6.      The Centers for Medicare and Medicaid Services ("CMS") was an agency of the U.S. Department of Health and Human Services ("HHS"), and was the federal government body responsible for the administration of Medicare.

7.      Medicare covered different types of benefits and was separated into different program parts.   Medicare Part B covered, among other things, doctors' services, outpatient care, and certain medical equipment that were medically necessary.

## DME Claims Submitted under Medicare Part B

8.      Durable medical equipment ("DME") was reusable medical equipment such as orthotic devices, walkers, canes, or hospital beds.   Orthotic devices were a type of DME that included knee braces, back braces, shoulder braces, and wrist braces (collectively, "braces").

9.      DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which

2

the providers agreed to comply with all Medicare-related laws, rules, and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for medically necessary items and services rendered to beneficiaries.

10. Medicare reimbursed DME providers and other health care providers for medically necessary items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

11. A Medicare claim for DME reimbursement was required to set forth, among other information, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

12. Medicare would pay a claim for the provision of DME only if the equipment was medically necessary, ordered by a licensed provider, and actually provided to the beneficiary. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. Medicare would not reimburse providers for claims that were procured through the payment of kickbacks and bribes.

3

## B.  The Conspiracy

13.  From in or around September 2018, and continuing through in or around September 2019, in the Middle District of Florida, and elsewhere, the defendant,

VINCENT R. SPERTI II,

did knowingly and willfully combine, conspire, confederate, and agree with others, to:

a.  defraud the United States out of money and property and by impairing, impeding, obstructing and defeating the lawful functions of HHS, through its agency CMS, in the administration of Medicare, by deceit, craft, and trickery;

b.  commit an offense against the United States, that is, soliciting and receiving remuneration (kickbacks and bribes), in violation of 42 U.S.C. § 1320a-7b(b)(1); and

c.  commit an offense against the United States, that is, offering and paying remuneration (kickbacks and bribes), in violation of 42 U.S.C. § 1320a-7b(b)(2).

## C.  Purpose of the Conspiracy

14.  It was a purpose of the conspiracy for Vincent R. Sperti II, Individual 1, Marketer 1, Marketer 2, and others to unlawfully enrich themselves by, among other things: (a) soliciting, receiving, offering, and paying kickbacks and bribes in exchange for signed orders for braces; (b) concealing and causing the concealment of the receipt and payment of kickbacks and bribes; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

4

### D.   <u>Manner and Means</u>

15.    The manner and means by which the Vincent R. Sperti II and his coconspirators sought to accomplish the purposes of the conspiracy included, among others, the following:

a.    It was a part of the conspiracy that Individual 1 did own and control TrueAlliance and that Vincent R. Sperti II worked at TrueAlliance.

b.    It was further a part of the conspiracy that Vincent R. Sperti II and Individual 1 would and did pay illegal kickbacks and bribes, including to Marketer 1 and Marketer 2 for signed orders for braces.

c.    It was further a part of the conspiracy that Vincent R. Sperti II and Individual 1 would and did purchase access to the personally identifiable information ("PII") and purported personal health information of Medicare beneficiaries.

d.    It was further a part of the conspiracy that Vincent R. Sperti II, Individual 1, and others would and did send or cause to be sent the Medicare beneficiaries' PII and purported personal health information to purported telemedicine companies.

e.    It was further a part of the conspiracy that Vincent R. Sperti II and Individual 1 would and did pay or cause to be paid illegal kickbacks and bribes to purported telemedicine companies in exchange for arranging for medical providers to sign orders for braces.

f.    It was further a part of the conspiracy that in exchange for the

referral of signed orders for braces, Vincent R. Sperti II and Individual 1 would and did receive illegal kickbacks and bribes from conspirators at DME providers and marketers acting as intermediaries on behalf of DME providers.

g.     It was further a part of the conspiracy that Vincent R. Sperti II, Individual 1, Marketer 1, Marketer 2, and others would and did disguise the nature and source of these kickbacks and bribes by entering into sham contracts that falsely identified the payments as for an hourly rate, when in reality the coconspirators paid a set amount per brace in the order.

h.     It was further a part of the conspiracy that the coconspirators at DME providers would and did use these fraudulently obtained brace orders to support false and fraudulent claims to Medicare.

i.     It was further part of the conspiracy that from in or around September 2018, and continuing through in or around September 2019, Vincent R. Sperti II and Individual 1, through TrueAlliance, received approximately $402,799.65 in illegal kickbacks and bribes in exchange for orders for braces.

j.     It was further part of the conspiracy that during that same time period, Vincent R. Sperti II and Individual 1, through TrueAlliance, paid approximately $266,510 in kickbacks and bribes, including to Marketer 1 and Marketer 2.

### E.    Overt Acts

16.    In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Orlando Division of the Middle District of Florida, and elsewhere, the following overt acts:

a.    On or about September 17, 2018, TrueAlliance paid Marketer 1 and Marketer 2, via their marketing company, approximately $20,000 via wire.

b.    On or about March 19, 2019, TrueAlliance paid Marketer 1 and Marketer 2, via their marketing company, approximately $14,640 via wire.

c.    On or about March 25, 2019, TrueAlliance paid Marketer 1 and Marketer 2, via their marketing company, approximately $38,540 via wire.

d.    On or about May 21, 2019, Vincent R. Sperti II sent an email listing the price of orders based on the brace included in the order.

e.    On or about March 25, 2019, TrueAlliance paid Marketer 1 and Marketer 2, via their marketing company, approximately $43,205 via wire.

All in violation of 18 U.S.C. § 371.

### COUNT TWO
### (Possession with the Intent to Distribute a Controlled Substance)

On or about September 30, 2020, in the Middle District of Florida, the defendant,

### VINCENT R. SPERTI II,

did knowingly and intentionally possess with intent to distribute a mixture and

7

substance containing a detectable amount of a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Pursuant to 21 U.S.C. § 841(b)(1)(E), the substance referenced above was a Schedule III controlled substance.

## FORFEITURE

1.  The allegations contained in Count One are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(7).

2.  Upon conviction of a federal health care conspiracy, in violation of 18 U.S.C. § 371, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense.

3.  The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of at least $24,907.01, which is the amount the defendant obtained as a result of the commission of the offense.

4.  The allegations contained in Count Two are incorporated by reference for the purpose of alleging forfeiture pursuant to 21 U.S.C. § 853(a).

5.  Upon conviction of a violation of 21 U.S.C. § 841(a)(1), the defendant shall forfeit to the United States, pursuant to 21 U.S.C. § 853(a)(1) and (2), any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as a result of such violation, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

8

6.    If any of the property described above, as a result of any act or omission

of the defendant:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be divided
           without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).


        ROGER B. HANDBERG
        United States Attorney

        *Lorinda Laryea* RW

        Lorinda I. Laryea
        Acting Chief, Fraud Section
        U.S. Department of Justice

        *Catherine Wagner* RW

        Catherine Wagner
        Trial Attorney
        Fraud Section, Criminal Division
        U.S. Department of Justice